UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
KERI L. WEISS,

                                          Plaintiff,

     -against-

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
23-CV-4398 (JMA)

FILED
CLERK
11:09 am, Sep 30, 2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Plaintiff Keri Weiss ("Plaintiff") seeks review and reversal of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge, denying her application for Social Security disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and the Commissioner's cross-motion is GRANTED.

## I. BACKGROUND

The Court assumes the parties' familiarity with this matter and summarizes the relevant facts and history based on the record and the parties' motion papers.

Following the denial of her disability application, Plaintiff requested a hearing. In September 2022, Administrative Law Judge Andrew Weiss (the "ALJ") conducted an administrative hearing, at which Plaintiff was represented by counsel. (Tr. 37–60.[1]) An impartial vocational expert ("VE") and Dr. Joseph Gaeta, an impartial medical expert who reviewed Plaintiff's medical records, also testified at the hearing. (Id.)

---

[1] Citations to "Tr." refer to the corresponding pages of the certified administrative transcript. (ECF No. 12.)

Plaintiff originally filed her application for disability insurance benefits in June 2020, alleging that she has been disabled since January 15, 2019 due to problems with her knee and back. Plaintiff was 40 years old when her alleged disability began.

The record before the ALJ included, inter alia: (i) treatment notes from plaintiff's treating doctors, Dr. Anthony Cappellino and Dr. Thomas Jan; (ii) records of MRIs concerning plaintiff's right knee and back; and (iii) opinions about Plaintiff's limitations from Dr. Jan, Dr. Andrea Pollack (a consultative examiner), Dr. Gaeta, and two other non-treating doctors.

Plaintiff had previously worked, since 2007, as a medical secretary in an emergency room. (Tr. 39–41.) This position was not a typical secretarial position as Plaintiff did not sit at a desk, and would work in the trauma room with the doctors "processing everything so that the doctors could be hands on with the patients." (Tr. 40–42.) Plaintiff testified that she was let go from this job in January 2019 because "it was too painful for me to go to work and . . . I was calling out too often." (Tr. 40.) Plaintiff testified that she has lower back pain and right leg pain, which gets worse the "more activity" she does. (Tr. 40.)

In 2002, Plaintiff had injured her right knee and lower back in a workplace accident. (Tr. 629.) She subsequently had two arthroscopic surgeries for her right knee in 2003 and 2006. (Tr. 15, 456–57, 629.)

Plaintiff began treatment with Dr. Jan for low back pain in 2007 and Dr. Jan "took over her care for chronic opioid therapy." (Tr. 629.) Plaintiff was prescribed opioids by Dr. Jan to treat her pain. The record describes issues Plaintiff had getting Worker's Compensation to approve payment for her opioid prescriptions and how those issues affected her treatment. Plaintiff was

also prescribed Tinzanidine/Zanaflex and Naproxen.[2]

In addition to her medications, Plaintiff also had knee injections in November 2019 and June 2020 to address her pain, but reported that the injections did not provide relief. (Tr. 17, 429–440)

Dr. Jan provided opinions in March 2021 and September 2022 concerning Plaintiff's alleged limitations.

On March 2021, Dr. Jan opined, inter alia, that Plaintiff can: (i) stand/walk for less than 2 hours; (ii) sit for less than 6 hours; and (iii) can occasionally lift/carry less than 5 pounds and can push/pull less than 5 pounds. (Tr. 761–763.) Dr. Jan's March 2021 opinion states that Plaintiff's pain is brought on by "strenuous activity." (Tr. 761.)

In September 2022, Dr. Jan opined that Plaintiff: (i) can stand/walk for 5 minutes at a time for a total of about 2 hours; (ii) sit for about 15 minutes at a time for a total of about 4 hours; (iii) would frequently be distracted by pain and symptoms and cannot perform even low stress work; (iv) would need to walk every 5 minutes for 3 or 4 minutes; (v) needs to shift positions and would need hourly 15-minute breaks; (vi) requires a cane on occasion; (vii) can rarely lift/carry up to 10 pounds; and (viii) would be absent about 4 days per month. (Tr. 843–846.)

Dr. Pollack, a consultative examiner, examined Plaintiff in December 2020 and opined that Plaintiff should avoid activities that require "heavy exertion" and has: (i) moderate to marked restrictions in squatting; (ii) moderate restrictions in bending, lifting, carrying, pushing, and pulling; (iii) mild to moderate restrictions in walking, standing, climbing stairs, and kneeling; and (iv) a mild restriction in sitting. (Tr. 481.)

---

[2] Tinzanidine "is used to help relax certain muscles . . ." Mayo Clinic, Tizanidine, https://www.mayoclinic.org/drugs-supplements/tizanidine-oral-route/description/drg-20066921 (last updated, Sept. 1, 2025). Naproxen "is a nonsteroidal anti-inflammatory drug (NSAID) used to relieve symptoms of arthritis . . . such as inflammation, swelling, stiffness, and joint pain." Mayo Clinic, Naproxen, https://www.mayoclinic.org/drugs-supplements/naproxen-oral-route/description/drg-20069820. (last updated, Sept. 1, 2025).

Dr. Gaeta—the impartial medical expert—reviewed Plaintiff's medical records, testified at the hearing, and was questioned extensively by Plaintiff's counsel. (Tr. 44–55.) Dr. Gaeta opined that Plaintiff can: (i) perform light work (ii) sit for 6 hours; (iii) stand/walk for 6 hours; (iv) lift/carry 20 pounds occasionally and 10 pounds frequently; and (v) occasionally climb ladders/ropes/scaffolds and frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 46–47.) Dr. Gaeta also opined that: (i) plaintiff's pain would not cause her to change position often; and (ii) the physical examination he reviewed were not consistent with radiculopathy. (Tr. 48–51.)

Two state agency physicians, Dr. K. Ahmed, M.D. and Dr. A. Lee, opined, in December 2020 and May 2021, that Plaintiff "lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently and sit and stand/walk for about 6 hours each in an eight-hour workday." (Tr. 61–86.)

In a decision dated September 22, 2022, the ALJ denied Plaintiff's claim. (Tr. 10–24.) The ALJ found that Plaintiff suffered from three severe impairments: (1) lumbar spine degenerative disc disease; (2) right knee degenerative joint disease; and (3) obesity. (Tr. 12.) The ALJ ultimately concluded that Plaintiff had the residual functioning capacity ("RFC") to perform "the full range of sedentary work as defined in 20 CFR 404.1567(a)."[3] (Tr. 14.)

Although the VE explained that Plaintiff's prior position as an emergency room medical secretary was actually performed at a light exertional level, the VE explained that the medical secretary position is generally performed at the sedentary exertional level. (Tr. 23.) Based on that testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a medical secretary as that position is generally performed and further found that were also are other jobs that Plaintiff could perform. (Id.)

---

[3] Sedentary work is defined as: "[W]ork involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became final. This appeal followed.[4]

## II. DISCUSSION

**A.** **Standard of Review**

In reviewing a denial of disability benefits by the Social Security Administration, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without

---

[4] In August 2023, Plaintiff filed another application for disability benefits alleging that she was disabled beginning in October 2022, shortly after the ALJ's decision. In February 2025, Administrative Law Judge Melissa Hammock issued a decision finding that Plaintiff was not disabled from October 2022 through December 31, 2023, but that Plaintiff became disabled on January 1, 2024 and remained disabled through the date of her decision. (ECF No. 13-1.)

5

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-cv-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

**B.      Social Security Disability Standard**

Under the Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" Id. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Within this framework, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv),

6

416.920(a)(4)(iv). The claimant bears the burden at the first four steps, but the burden shifts to the Commissioner at step five. Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

As Plaintiff's application for disability insurance benefits was filed after March 27, 2017, her claims are governed by the current regulations concerning the consideration of medical opinions. See Darcy v. Comm'r of Soc. Sec., No. 20-cv-4769, 2023 WL 2035945, at *2 (E.D.N.Y. Feb. 16, 2023) (citing 20 C.F.R. § 404.1520c). "Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight." Knief v. Comm'r of Soc. Sec., No. 20-cv-6242, 2021 WL 5449728, at *6 (S.D.N.Y. Nov. 22, 2021) (quotation marks omitted). ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the current regulations, an ALJ "must evaluate the persuasiveness of all medical opinions in the record based on five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion." Rosario v. Comm'r of Soc. Sec., No. 21-cv-1151, 2022 WL 4593069, at *5 (S.D.N.Y. Sept. 30, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors in evaluating a medical opinion. Id. (citing 20 C.F.R. § 404.1520c(b)(2)). For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will

7

be." Id. § 404.1520c(c)(2). "As part of his or her decision, the ALJ must explain how the factors of supportability and consistency were considered." Rosario, 2022 WL 4593069, at *5 (citing id. § 404.1520c(b)(2)). Generally, the ALJ may, but is not required to, explain how the other factors were considered. Id. § 404.1520c(b)(2); Rosario, 2022 WL 4593069, at *5.

### C.   Analysis

Plaintiff's instant appeal challenges whether the ALJ's RFC determination is supported by substantial evidence. She argues that the ALJ did not properly consider and weigh all the medical opinions and other evidence in the record in making his RFC determination. Relatedly, Plaintiff also argues that the ALJ improperly rejected her statements regarding her subjective reports of pain and other symptoms. Defendant counters that the ALJ's decision was supported by substantial evidence and that the ALJ properly considered and analyzed the opinions and other evidence in the record. The Court agrees with Defendant.

In formulating an RFC, an ALJ must consider all the relevant evidence and determine the most that a plaintiff can do, despite that plaintiff's impairments. See 20 C.F.R. § 404.1545(a)(3). Where, as here, a plaintiff challenges an ALJ's RFC evaluation, the burden is on the plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. (See 20 C.F.R. § 404.1512(a).) As set forth below, the ALJ's opinion belies Plaintiff's arguments, and demonstrates that the ALJ properly considered all the evidence in the record in making his RFC determination, which was supported by substantial evidence.

Plaintiff asserts that the ALJ's RFC determination was erroneous because the ALJ failed to include greater limitations contained in the opinions of Dr. Jan concerning Plaintiff's sitting and postural limitations and the number of days Plaintiff would miss work due to her impairments.

The ALJ was presented with conflicting medical opinions concerning Plaintiff's sitting and postural limitations and the amount of days she would miss work due to her condition. Substantial

8

evidence supported the ALJ's RFC determination concerning these purported limitations. The ALJ's decision recounted the medical records in depth and then analyzed each of the medical opinions and explained the extent which those opinions were supported by, and consistent with, evidence in the record.

Dr. Jan opined that Plaintiff was more limited than the ALJ's ultimate RFC determination whereas certain non-treating doctors, including Dr. Gaeta, opined that Plaintiff had fewer limitations than those found in the ALJ's ultimate RFC determination. The ALJ's decision, however, was supported by substantial evidence and the ALJ adequately analyzed the medical opinions in the record and explained his RFC determination. There is ample evidence in the record supporting the ALJ's determination not to adopt the sitting and postural limitations set out in Dr. Jan's opinions as well as Dr. Jan's opinion that Plaintiff's condition would cause her to miss four days of work per month.

Plaintiff highlights various alleged flaws in the ALJ's determination. None of these arguments are persuasive.

Plaintiff insists that Dr. Jan's September 2022 opinion is actually consistent with Dr. Pollack's opinion, and that the ALJ failed to properly evaluate this purported consistency. This argument is meritless as Dr. Pollack opined that Plaintiff had a mild limitation in sitting and the ALJ agreed that only a mild sitting limitation was supported by the record, (Tr. 22). The ALJ's RFC determination then comported with that analysis. A mild limitation in sitting is consistent with the ALJ's RFC determination that Plaintiff can perform sedentary work. See Rosa v. Comm'r of Soc. Sec., No. 19-CV-1433, 2022 WL 2274720, at *10 (E.D.N.Y. June 23, 2022) (finding doctor's opinion that the plaintiff had a "moderate" limitation in sitting was consistent with sedentary work). By contrast, Dr. Pollack's opinion that Plaintiff had a mild sitting limitation was

9

not, as Plaintiff suggests, consistent with Dr. Jan's opinion that Plaintiff could only sit for about 4 hours intermittently, (Tr. 844.)

The ALJ also pointed out that Dr. Jan's two opinions were inconsistent. While Plaintiff insists that finding was erroneous, the Court disagrees. While Dr. Jan's September 2022 opinion asserts that Plaintiff requires a cane on occasion, Dr. Jan's March 2021 opinion and his treatment notes do not mention a cane. This was a material inconsistency that ALJ appropriately relied on.[5]

The ALJ also stressed that Dr. Jan's own records "document primarily non-antalgic gait and full range of motion." (Tr. 21.) Plaintiff contends that "Plaintiff's pain is not reflected in her ambulation." (Pl.'s Contentions at 3, ECF No. 11-2.) The ALJ, however, was not required to accept this argument and view of the record. The record—including Dr. Jan's numerous records documenting that Plaintiff had a "non-antalgic" gait—provided substantial evidence to support the ALJ's conclusion that Plaintiff was not as limited as she and Dr. Jan claimed. While Plaintiff cites treatment notes where Dr. Cappellino recorded that Plaintiff had an antalgic gate, the ALJ was, in light of all the evidence, permitted to rely on Dr. Jan's numerous records indicating otherwise.

The ALJ also pointed out that the imaging of Plaintiff's knee and back showed "largely mild" and "minimal" findings. (Tr. 21–22.) Those statements by the ALJ were further supported by Dr. Gaeta's review of Plaintiff's MRIs, (Tr. 20–21, 45–46), and the ALJ's finding that Dr. Gaeta's opinion was "somewhat persuasive," (Tr. 21).

Plaintiff also challenges the ALJ's conclusion that "the records do not support radicular findings which would support the need for frequent change in position." (Pl. Mem. at 11, ECF

---

[5] Plaintiff also suggests that, to the extent there were any ambiguities and inconsistencies between Dr. Jan's two opinions concerning the cane and other limitations, the ALJ had to affirmatively contact Dr. Jan to try to resolve such ambiguities and inconsistences. ALJs, however, are not required to contact treating providers in such circumstances. Moreover, the specific record in this case makes clear that the record before the ALJ was adequately developed. This record included a consultative examination and the testimony of Dr. Gaeta, as well as opinions from other non-examining doctors. Moreover, the inconsistency between Dr. Jan's two opinions was just one reason cited by the ALJ, who also pointed out how Dr. Jan's opinions were not supported by, and consistent with, numerous other aspects of the record.

10

No. 11-1; see Tr. 21.) In support, Plaintiff cites to a few records referencing radiculopathy and an MRI of Plaintiff's back. (Pl. Mem. at 11–12 (citing Tr. 801, 805, 834).) However, the ALJ's analysis of Plaintiff's alleged radiculopathy was supported by substantial evidence. The ALJ–who acknowledged that there were some limited treatment notes indicating that Plaintiff had radiculopathy or "potential radiculopathy," (Tr. 19)—explained that "there are no <u>consistent</u> clinical findings to support radiculopathy, no MRIs showing nerve root involvement or stenosis, . . . no EMGs were performed," and there is "little or no objective support for radiculopathy." (Tr. 15, 20, 22 (emphasis added).) The ALJ's analysis was supported by substantial evidence, including the testimony of Dr. Gaeta, who did not see evidence of radiculopathy. (Tr. 51.) Dr. Gaeta explained that a radiculopathy diagnosis "needs to be substantiated with physical findings and possibly with studies" and that the "physical examinations" of Plaintiff he reviewed in the record were not "consistent with . . . radiculopathy." (Tr. 51.) Again, the ALJ generally (and permissibly) found Dr. Gaeta's opinion to be "somewhat persuasive." (Tr. 21.)

Finally, Plaintiff asserts that the ALJ erred in analyzing Plaintiff's reports concerning her activities of daily living and that this error undermined the ALJ's related analyses of Dr. Jan's opinions and Plaintiff's testimony and statements about her pain and other symptoms.

In his analysis of Dr. Jan's opinions, the ALJ—in addition to relying on the other aspects of the record outlined above—also pointed out that "claimant's own reports of her activities of daily [living] support greater functionality." (Tr. 21.) That determination was supported by substantial evidence. The ALJ had previously noted, in summarizing the treatment notes, that although Plaintiff claimed that she does not take care of her children, she had reported to Dr. Jan that she was the "sole childcare provider" to her children and, at one point, was helping her mother move. (Tr. 20; see also Tr. 813 (Dec. 7, 2021 treatment note from Dr. Jan where Plaintiff reported that her previous prescription for 30 mg of OxyContin twice daily "allowed her to continue with

11

all of her activities of daily living including childcare").) The ALJ's decision also recounted other treatment notes from Dr. Jan where Plaintiff reported that she was able to perform daily activities or had "meaningful improvement of her pain while performing her" activities of daily living. (Tr. 17–18.) These aspects of the record cited by the ALJ supported his RFC determination.

Relatedly, Plaintiff maintains that, in analyzing her testimony and statements about her pain and other symptoms, the ALJ erred when he stated that her "reported activities of daily living likewise indicate that she is functioning well on a day-to-day basis." (Tr. 20.) Plaintiff asserts that this conclusion is inconsistent with the adult function report Plaintiff filled out, which is cited repeatedly in this paragraph of the ALJ's decision. The Court is not persuaded. First, the ALJ did not mischaracterize any of the specific statements in this report and acknowledged that Plaintiff stated in the report that she "can do dishes and sweep for short periods." (Tr. 20; see Tr. 311 (adult function report).) Second, while the ALJ did cite this adult function report multiple times in this paragraph of his decision, the ALJ's decision also indicates in this paragraph that his conclusion about claimant's "reported activities" is not based solely on the adult function report filled out by Plaintiff. Rather, the ALJ's conclusion is also based on the activities of daily living that Plaintiff reported to Dr. Jan, including her statements to Dr. Jan that Plaintiff is her children's "sole childcare provider and that at one point she was helping her mother move." (Tr. 20.) Moreover, at other points in the decision, the ALJ recounted various treatment notes from Dr. Jan where Plaintiff reported that she experienced "meaningful improvement of her pain while performing her [activities of daily living]," (Tr. 17, 18), and that her pain medication allowed her to perform her activities of daily living, (Tr. 18). Those parts of the record further buttress the ALJ's conclusion that "[c]laimant's reported activities of daily living likewise indicate that she is functioning well on a day-to-day basis." (Tr. 20.)

While Plaintiff contends that the ALJ's analysis and conclusions concerning her subjective reports of pain were deficient, (Pl. Mem. at 17–21; Pl.'s Contentions at 5–7), none of these arguments are persuasive.

Ultimately, the ALJ's RFC determination was supported by substantial evidence and the ALJ's analysis in his decision was more than sufficient.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion.  The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated:  September 30, 2025
       Central Islip, New York

                                                      /s/   (JMA)
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE